# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL W. WILL, )
       Plaintiff, )
          v. )   Civil Action No. 08-222 Erie
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
       Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

    Plaintiff, Paul W. Will, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff filed an application for SSI on October 7, 2005, alleging disability since August 1, 2005 due to hernia surgery, back problems, acid reflux and paranoia (Administrative Record, hereinafter "AR", at 54-57; 68). His application was denied initially, and Plaintiff requested a hearing before an administrative law judge ("ALJ") (AR 43-49). A hearing was held on November 8, 2007 and on January 24, 2008, the ALJ found that Plaintiff was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 16-31; 216-240). Plaintiff's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, I will deny the Plaintiff's motion and grant the Defendant's motion.

### I. BACKGROUND

    Plaintiff was born on April 23, 1963 and was forty-four years old on the date of the ALJ's decision (AR 16; 54). He is a high school graduate and attended college for one year (AR 86; 129). His past relevant work experience was as a computer repair person but he has not worked since 1995 (AR 16).

Plaintiff has been treated by several health care providers since July 1991 with respect to his alleged physical impairments (AR 113-115; 118-122; 128-129; 176-212). In this action, Plaintiff is challenging the ALJ's findings and conclusions only with respect to his alleged mental impairments. I therefore focus my discussion accordingly.

Plaintiff was seen by George Ellis, M.D. on February 14, 2005 for his complaints of heartburn, groin and testicular pain (AR 115). In the course of his examination, Dr. Ellis reported that Plaintiff was alert and oriented, exhibited appropriate affect and demeanor, and his insight and judgment were good (AR 115). When Plaintiff was seen by Gene Marcelli, M.D., on May 11, 2005 for evaluation of his hernia, no psychiatric complaints were noted (AR 120). Similarly, no psychiatric symptoms were reported by the Plaintiff to Paul C. Lange, M.D., who evaluated Plaintiff with respect to his back pain (AR 128).

Plaintiff has been treated by Miroslav Zeleznik, M.D. since May 2005 (AR 172). Dr. Zeleznik's records consistently revealed that Plaintiff had no psychiatric complaints (AR 180-181; 183; 193; 196).

Plaintiff was evaluated by Julie Uran, Ph.D. on January 17, 2006 (AR 135-142). He drove unaccompanied to the evaluation (AR 136). Plaintiff reported that he was assaulted in 2003 by a former employer who struck him and shut his arm in a truck door because he would not supply a computer password (AR 136). He claimed the police refused to investigate the incident because the employer was the owner of a car dealership that repaired police cars (AR 136). Since the assault, Plaintiff relayed that was paranoid and did not want to go anywhere without a witness, given the possible interaction with his assaulter (AR 136). He reported nightmares, flashbacks, sleep disturbances and that he was "grumpy" (AR 136). He denied receiving any mental health services or medications (AR 136).

Dr. Uran reported that Plaintiff exhibited coherent and spontaneous speech, normal thought processes, had no perceptual disturbances or problems with memory and had appropriate impulse control and judgment (AR 137-138). Plaintiff reported attentional difficulties, but he was able to identify proverbs and perform serial subtraction with ease (AR 137). Dr. Uran noted that his vocabulary skills were above average and above-average intelligence was likely (AR 137). Plaintiff cried during the interview and often spoke of being wronged by others (AR 137).

She found he was unmotivated and disinterested in seeking treatment (AR 138).

Dr. Uran diagnosed Plaintiff with a paranoid personality disorder, rule out delusional disorder and post-traumatic stress disorder, and assigned him a Global Assessment of Functioning ("GAF") score of 55 (AR 138).[1] Dr. Uran opined that Plaintiff's mental impairments did not affect his ability to understand, remember and carry out instructions (AR 141). She further opined that his ability to interact appropriately with the public and co-workers was only slightly limited and his ability to respond appropriately to work pressures was moderately limited, but that his ability to interact appropriately with supervisors was markedly limited (AR 141). She noted that Plaintiff had problematic interactions with employers by history and typically felt wronged by others, particularly those in authority, but that he was not functioning at a level commensurate with his ability (AR 141).

Plaintiff completed an Activities of Daily Living questionnaire in February 2006 (AR 75-94). In this questionnaire, Plaintiff stated that he was able to care for pets, handle his personal care, pay bills, mow the lawn, take out the trash, prepare meals, perform household chores and grocery shop (AR 84-85). He claimed he did not got out alone in public anymore since the assault (AR 84). He reported that his concentration was "excellent" and that he was teaching himself computer languages and computer operating systems (AR 86). Plaintiff was learning to play the mandolin and guitar, was able to help his girlfriend with puzzles and sewed simple projects such as pillows (AR 86; 91). Plaintiff reported that he was able to get along with his family and friends, although he claimed some of his neighbors were "jerks" (AR 88). He stated that his girlfriend's work schedule made socializing with others problematic since she worked the night shift, but they did socialize with her family "a good deal" during the holidays (AR 88). He reported staying in contact with friends "all over the USA" via phone, mail and other means (AR 89). He claimed he had gotten along with his supervisors in the past, had no trouble with

---

[1]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. It represents "the clinician's judgment of the individual's overall level of functioning." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 32 (4th ed. 2000). Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers." *Id*. at 34.

3

authority figures "who do their jobs correctly" and was able to adapt to change (AR 89-91).

On March 9, 2006, Sanford Golin, Ph.D., a state agency reviewing psychologist, completed a Mental Residual Functional Capacity Assessment form, and found that Plaintiff was not significantly limited in a number of areas, but was moderately limited in his ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others (AR 156-157). On a Psychiatric Review Technique form completed the same date, Dr. Golin concluded that Plaintiff had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and had no repeated episodes of decompensation of extended duration (AR 153).

Dr. Golin found that the medical evidence established a paranoid personality disorder but that Plaintiff could maintain socially appropriate behavior, sustain an ordinary routine and adapt to routine changes without special supervision (AR 158). His daily activities and social skills were functional from a psychiatric standpoint (AR 158). Dr. Golin acknowledged Dr. Uran's report, but only partially adopted her opinion relative to Plaintiff's functional capacity (AR 158). Dr. Golin found that Dr. Uran's opinion was heavily based on Plaintiff's self reported symptoms and limitations and that the totality of the evidence did not support his subjective complaints (AR 158). He concluded that Plaintiff could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment" (AR 159).

On August 22, 2007, Plaintiff was psychologically evaluated by Fred P. Gallo, Ph.D. upon referral by his representative, paralegal Eva Palmer (AR 168; 225). Plaintiff reported the following employment history: seven months as a technical consultant for Northwinds; three to four years with Time Warner as a consultant; two and one half years as a hydraulic designer; one year as an insurance salesman; and five months at a juvenile detention center in Florida (AR 168). Plaintiff reported that he was treated by Dr. Zeleznik for his physical impairments and denied a history of psychiatric treatment (AR 168). Dr. Gallo observed that his affect was marginally appropriate and that he tended to be "quite verbose" in explaining in great detail the circumstances of the assault that occurred in 2003 (AR 168-169). Frequently throughout the

4

interview process Plaintiff commented about being paranoid but did not consider that his paranoia interfered with his ability to function effectively in the area of computer repair (AR 169). Dr. Gallo noted that Plaintiff presented as "rather desperate" about securing a physician in the area and was certainly capable of accomplishing this task, but "had been unable to get himself to go forward on this" (AR 169). Plaintiff reported that he experienced considerable anxiety about leaving his house and would only do so when accompanied by his girlfriend or another "secure person" (AR 169).

Dr. Gallo observed that Plaintiff appeared to be intelligent but in considerable distress about his current circumstances, which included pain related to his hernia and an inability to apply himself to work on a consistent basis (AR 169). WRAT testing revealed Plaintiff had a high average range of reading ability and an average range of arithmetic skills (AR 169). The self-reporting tests administered by Dr. Gallo for assessing depression and anxiety were in the moderate range (AR 169). His MMPI results were similar to individuals displaying deficits in ego functions (AR 170). The post-traumatic scales were elevated and Dr. Gallo noted that individuals with similar profiles often presented themselves as physically ill and characteristically developed physical symptoms as reactions to mental stress (AR 170).

Dr. Gallo found that Plaintiff experienced significant depression, anxiety, post-traumatic stress and a tendency to somaticize as a result of psychological stress (AR 170). He noted there were many oddities of his thought processes which suggested pre-psychotic features (AR 170). Dr. Gallo further found significant anxiety-related disorders, including recurrent and intrusive recollections of a traumatic experience, persistent fear of traveling distances from home, generalized anxiety and clinical depression (AR 170). According to Dr. Gallo, Plaintiff evidenced deeply engrained, maladaptive patterns of behavior associated with pathologically inappropriate suspiciousness and oddities of thoughts (AR 170). He concluded that these psychiatric features, in addition to Plaintiff's physical limitations, resulted in marked restrictions in all areas of functioning (AR 170-171). He diagnosed Plaintiff with post-traumatic stress disorder, chronic, panic disorder with agoraphobia, major depressive disorder, recurrent,

5

paranoid personality disorder and assigned him a GAF of 40 (AR 171).² He recommended Plaintiff undergo psychiatric treatment to include psychotherapy and psychotropic medication (AR 171).

On November 5, 2007, Plaintiff's girlfriend, Amanda Arner, submitted a statement indicating that she was a registered nurse and had lived with the Plaintiff since 1999 (AR 106). She claimed that since he was assaulted in 2003, Plaintiff changed from being an easy-going, trusting person to a suspicious and paranoid person almost unable to leave the house (AR 106). She indicated that he was afraid to go to the grocery store alone and lived in constant fear of encountering the person who assaulted him, as well as strangers attacking him (AR 106). If he did go out alone, Ms. Arner stated that he would be visibly anxious and shaken and it took him several hours to calm down (AR 106). She further stated that since Plaintiff's hernia injury, assault and surgery, Plaintiff was barely able to make it through the day (AR 106).

Finally, on November 6, 2007, Dr. Zeleznik completed a Medical Impairment Evaluation form stating that Plaintiff suffered from severe anxiety and mild depression with poor concentration and an inability to finish work (AR 172-175).

Plaintiff and George Starosta, a vocational expert, testified at the hearing held by the ALJ on November 8, 2007 (AR 216-240).³ Plaintiff testified that he had not worked since 1995 when he performed computer repair work for approximately five or six months (AR 221). Plaintiff claimed he was fired from this job in a dispute over wages and benefits (AR 228-230). Plaintiff lived with his girlfriend, was a high school graduate and had completed several semesters of college (AR 220). He testified that he had "just been diagnosed" with a mental health problem 30 to 60 days prior to the hearing but had no treatment scheduled (AR 222). Dr. Zeleznik treated him with respect to his physical impairments but had not referred him to any mental health

---

²Scores between 31 and 40 indicate "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; ...)." *Id.*

³Two previous hearings scheduled in this case on July 12, 2007 and September 11, 2007 were postponed pursuant to the Plaintiff's request and his representative's request respectively (AR 241-248).

6

providers (AR 224-225). Plaintiff stated that he was referred to Dr. Gallo for evaluation by his paralegal representative (AR 225). He testified that his concentration had decreased and he had performed poorly on the math portion of the testing administered by Dr. Gallo (AR 231). Plaintiff claimed that he suffered from diminished concentration, forgetfulness and erratic sleep (AR 232-234). He had difficulty going out in public and never went out alone (AR 231-232). Plaintiff testified that most of his friends were scattered throughout different states and he was friendly with an elderly neighbor who accompanied him to the store (AR 234).

The vocational expert was asked by the ALJ if work existed for an individual of Plaintiff's age, education, and work history, who was limited to sedentary work with additional physical restrictions in a low stress environment, involving no more than simple, routine, repetitive tasks and minimal contact with the public, coworkers and supervisors (AR 235-236). The vocational expert testified that such an individual could perform work as a surveillance system monitor, assembler and packer (AR 236). He further testified however, that such individual would not be able to work if he were absent from work approximately three days per month (AR 237).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not eligible for SSI benefits within the meaning of the Social Security Act (AR 16-31). The Appeals Council subsequently denied Plaintiff's request for review (AR 5-8) rendering the ALJ's decision the final decision of the Commissioner. He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Plaintiff's case at the fifth step. The ALJ found that Plaintiff's anxiety and paranoid personality disorder were severe impairments, but determined at step three that he did not meet a listing (AR 19-20).[4] The ALJ further found he had the residual functional capacity to perform a restricted range of sedentary work in a low stress environment, defined as simple, routine, repetitive tasks with minimal contact with the public, coworkers and supervisors (AR 22). The ALJ concluded, after considering the Plaintiff's age, education, work experience, residual functional capacity and vocational expert's testimony, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (AR 30-31). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff challenges the ALJ's assessment of his residual functional capacity ("RFC").

---

[4]The ALJ also found that Plaintiff had the following severe physical impairments but that these impairments did not meet a listing: polymyalgia rheumatica, asthma, back pain, residual pain status-post left inguinal herniorrhaphy (AR 19-20).

8

"'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121. Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5. Here, the ALJ concluded that Plaintiff could perform a restricted range of sedentary work in a low stress environment, defined as simple, routine, repetitive tasks with minimal contact with the public, coworkers and supervisors (AR 22). Plaintiff argues that the ALJ erred in disregarding Dr. Gallo's opinion which established "severe limitations." *See* Plaintiff's Brief p. 7. Plaintiff further claims the ALJ erred in failing to incorporate the limitations found by Dr. Gallo in his hypothetical to the vocational expert.

Dr. Gallo opined that Plaintiff was markedly limited in his activities of daily living, had marked difficulties in maintaining social functioning; had deficiencies of concentration, persistence and pace resulting in frequent failure to complete tasks in a timely manner; and had repeated episodes of deterioration or decompensation in work settings which caused him to withdraw or experience exacerbation of signs and symptoms (AR 170-171). The term "marked" means "more than moderate but less than extreme," and a "marked limitation" is one that seriously interferes with a claimant's ability to "function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00C.

Dr. Gallo was a consulting psychologist, having examined the Plaintiff pursuant to the request of his paralegal representative. The treating physician rule does not apply to a consulting examiner's opinion. *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993) (doctrine had no application to physician who examined claimant once). The Commissioner's regulations do

9

acknowledge that, as a general principal, opinions from examining sources are given more weight than opinions from non-examining sources. *See* 20 C.F.R. 416.927(d)(1). The regulations do not require however, that in every case, an examining physician's medical opinion must be favored over that of a non-examining physician. Instead, the Commissioner considers a number of competing factors, such as, *inter alia,* the extent to which the opinion is supported by a logical explanation and the extent to which the source's opinion is consistent with the entirety of the evidence. *See generally* 20 C.F.R. § 416.927(d)(1)-(6).

The ALJ's rejection of Dr. Gallo's opinion is supported by substantial evidence. The ALJ considered Dr. Gallo's opinion based upon his psychological evaluation of Plaintiff, and concluded that his opinion was unsupported by the findings from his mental status examination and other evidence in the record (AR 20-22; 28-29). The ALJ found that Plaintiff had only mild restrictions in his daily activities, noting that Dr. Gallo's marked finding was based on Plaintiff's subjective complaints and was inconsistent with Plaintiff's own acknowledgment that he was able to take care of his personal grooming, perform basic household activities and grocery shop (AR 20). The ALJ further found Plaintiff was moderately limited in his social functioning (AR 21). He noted that Plaintiff was able to communicate his needs clearly, maintained good eye contact, was able to initiate social contacts, had maintained a long-term relationship with his girlfriend and a friendship with an elderly man (AR 21). The ALJ gave more weight to the opinion of Dr. Golin, the state agency reviewing psychologist, whose opinion he found more consistent with the evidence of record (AR 21).

In rejecting Dr. Gallo's opinion that Plaintiff had deficiencies with regard to concentration, persistence or pace, the ALJ noted Dr. Golin's finding that Plaintiff had no difficulties in this area (AR 21). He observed that Dr. Uran, the consultative examiner, opined that Plaintiff had no limitations in understanding and carrying out simple, detailed and complex tasks, was able to respond appropriately to changes in the work setting and was only moderately limited in his ability to appropriately respond to work pressures (AR 21). The ALJ noted that both Dr. Gallo and Dr. Uran determined that Plaintiff was of above-average intelligence, and that Dr. Gallo's opinion was based upon the combination of Plaintiff's mental and physical conditions, which were not fully corroborated by the objective medical evidence (AR 21).

Finally, the ALJ found that contrary to Dr. Gallo's conclusion that Plaintiff had experienced repeated episodes of decompensation, there was no evidence that he had experienced any such episodes as defined in the Regulations and in fact, had never been hospitalized or prescribed psychotropic medication (AR 21).

Plaintiff argues that the ALJ improperly rejected Dr. Gallo's opinion because the ALJ inferred that Plaintiff's evaluation was for secondary gain and not treatment. *See* Plaintiff's Brief pp. 7-8. To the contrary, the record reflects, as discussed above, that the ALJ rejected Dr. Gallo's opinion for a variety of reasons which were substantially supported by the record. The ALJ's rejection of Dr. Gallo's opinion was further buttressed by his conclusion that the Plaintiff's subjective complaints to Dr. Gallo were not supported by the overall record (AR 20). In any event, it was entirely proper for the ALJ to consider the circumstances surrounding the scheduling of the Plaintiff's appointment with Dr. Gallo in the overall credibility mix.[5]

Finally, Plaintiff argues that the ALJ failed to accurately portray his mental limitations in his hypothetical posed to the vocational expert. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722

---

[5]Plaintiff points to other evidence in the record to support his contention that his paranoid personality disorder is disabling. *See* Plaintiff's Brief pp. 9-10. However, the ALJ properly weighed the evidence, including the Plaintiff's own account of his activities and limitations, and found that he could perform work involving simple, routine, repetitive tasks with minimal contact with the public, coworkers and supervisors. We are not permitted to re-weigh the evidence or substitute this Court's own conclusions regarding the evidence for those of the Commissioner. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3rd Cir. 2002); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3rd Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).

11

F.2d 1150 (3rd Cir. 1983). However, "[a]lthough hypothetical questions posed by an ALJ to a vocational expert must reflect a plaintiff's impairments, an ALJ need not include every unsubstantiated assertion of limitation in his hypothetical question." *Wilson v. Sullivan,* 1991 WL 311910 at *4 (W.D.Pa. 1991), *citing Chrupcala, supra.* Rather, he must include "only those limitations supported by objective medical evidence." *Id.*

Plaintiff contends that the ALJ's hypothetical erroneously failed to include the limitations set forth in Dr. Gallo's opinion, namely, those limitations attributable to an individual with a GAF score of 40. *See* Plaintiff's Brief pp. 10-11. Plaintiff claims that the ALJ "ignored" this score and its "implications" in his hypothetical question posed to the vocational expert. *Id*. at p. 10. The ALJ expressly considered the GAF scores in connection with his exhaustive discussion of the medical evidence and properly rejected the GAF score attributed to him by Dr. Gallo, as well as Dr. Gallo's opinion that Plaintiff suffered from marked limitations in all areas of functioning (AR 19-30).

## IV. Conclusion

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL W. WILL, )
)
       Plaintiff, )
)
       v. )    Civil Action No. 08-222 Erie
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
       Defendant. )

## **ORDER**

    AND NOW, this 24th day of April, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

    IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Paul W. Will.

    The clerk is directed to mark the case closed.


                                                   s/ Sean J. McLaughlin
                                                   United States District Judge

cm: All parties of record.